UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ARCMELT COMPANY, LC, | ) |
| | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| v. | ) No. 4:15-CV-00181-AGF |
| | ) |
| ARDLEIGH MINERALS, INC., | ) |
| | ) |
| Defendant/Counterclaim Plaintiff. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff ArcMelt Company, LC's ("ArcMelt") Motion to Dismiss the counterclaims filed against it by Defendant Ardleigh Minerals, Inc. ("Ardleigh"). For the reasons set forth below, Plaintiff's motion will be granted as to Defendant's counterclaim for misrepresentation (Count IV); otherwise, Plaintiff's motion will be denied.

## BACKGROUND

In this diversity breach of contract case, Plaintiff, a "scrapper" of used materials, alleges that it entered into an agreement with Defendant, a recycler of surplus, off-specification, and byproduct materials, pursuant to which Plaintiff would sell to Defendant cored wire of various diameters. (Doc. No. 1 at 2-3; Doc. No. 8 at 11.) Plaintiff's agreement with Defendant was memorialized in two separate purchase orders, one dated May 2014, and another dated July 2014. (Doc. No. 1 at 2-3.) Prior to the arrangement,

Defendant tested a sample of the scrap material to confirm that Defendant would be able to recycle and repurpose the material so it could be sold to a third party. (Doc. No. 8 at 12.) In the May 2014 purchase order, Defendant agreed to pay Plaintiff $822,611.41; in the July purchase order, Defendant agreed to pay Plaintiff an additional $196,528.40 for additional material. *Id.* Plaintiff alleges that it fully performed its obligations under both purchase orders by delivering the specified goods in several shipments throughout 2014. *Id.* Plaintiff alleges that Defendant refused to pay for the goods, and brings the current lawsuit, asserting claims for breach of contract, action on account, unjust enrichment, and quantum meruit.

Defendant admits that it executed the relevant purchase orders and that it received shipments of goods from Plaintiff. (Doc. No. 8 at 2-3, 12.) It also admits that it has not fully paid Plaintiff for the goods it received (although at least one payment, in the amount of $17,100.20, was apparently made). However, Defendant alleges, among other affirmative defenses, that this failure to pay was because of "[Plaintiff]'s contractual breaches, misrepresentations, and the legal principle of set-off in that the materials [shipped] were defective, of inferior quality, and did not comport with the specifications that [Plaintiff] represented." *Id.* at 3. Defendant also asserts counterclaims against Plaintiff, alleging that the chemical composition of the goods actually received from Plaintiff varied substantially from the sample that Defendant tested prior to signing the agreements with Plaintiff. *Id.* at 12. For example, among other variations in composition, Defendant asserts that the materials actually received from Plaintiff were between 38.84% and 44.56% nickel (instead of 28% as represented by Plaintiff) and 32.11% and 35.60%

tungsten (instead of 55% as represented by Plaintiff). *Id.* at 14. Thus, Defendant suggests that the market value of the goods was less than Plaintiff had originally suggested.

Defendant alleges that it resold the shipment of materials it received on June 4, 2014, prior to determining that the goods were nonconforming, and that the third parties to whom Defendant sold the material may assert claims against Defendant. Moreover, Defendant claims that it sold some of the nonconforming material to one of its "important" clients, who discovered the disparity in routine testing. *Id.* Defendant alleges that in spite of the material's shortcomings, Defendant's important customer remained willing to purchase the goods, but only at a deeply discounted price. Defendant has offered to pay Plaintiff a similarly reduced price or otherwise to return the remaining materials to Plaintiff.

Defendant has also suggested some other defects attendant with the goods, such as hollow tubes that were supposed to be filled with material, and mislabeled boxes, apparently reflecting the agreed-upon chemical composition rather than the actual composition. Defendant asserts that it sustained damage to its business reputation, and must undergo an expensive verification process in order to utilize any of the goods shipped because it can no longer trust Plaintiff's representations as to the quality of the goods. It also alleges that it must pay storage fees for the goods during such a verification process. Defendant's counterclaims include causes of action for breach of contract, breach of express warranty, breach of implied warranty, and misrepresentation.

In its instant motion, Plaintiff seeks to dismiss all of Defendant's counterclaims under Federal Rule of Civil Procedure 12(b)(6), arguing that Defendant has failed to allege

that it has actually been damaged by Plaintiff. (Doc. No. 16 at 2.) Plaintiff states that even if Defendant's allegations are true, Defendant has not been damaged because, to date, it has not paid Plaintiff for the goods it received, and therefore its bare allegations are insufficient to maintain a claim. Plaintiff asserts that Defendant's nonmonetary damages are hypothetical or otherwise vague. Plaintiff also asserts that the issues raised in Defendant's four counterclaims are a mere repackaging of affirmative defenses raised elsewhere in its Answer. Finally, Plaintiff argues that Defendant's misrepresentation claim is barred by the economic loss doctrine. *Id.* at 3-4.

Defendant responds that its counterclaims allege facts constituting the following damages:

- Plaintiff's actions resulted in a significant decrease in the value of the goods in Defendant's possession because the chemical composition was different than what Plaintiff represented.
- Defendant was forced to undergo a cost and time-sensitive review to verify the contents of the good shipped by Plaintiff.
- Defendant must pay storage fees for materials that did not meet specifications or contained other defects.
- Defendant's business reputation was harmed because Defendant unknowingly sold goods in the marketplace (to at least one "important customer[]") that were below-grade and defective.

(Doc. No. 16 at 4-7.)

## **DISCUSSION**

To survive a 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but the allegations must nonetheless "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A

complainant need only allege facts that permit the reasonable inference that the defendant is liable, even if the complaint "strikes a savvy judge that actual proof of the facts alleged is improbable and recovery very remote and unlikely." *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010) (citation and internal quotation marks omitted). This, however, requires more than mere "labels and conclusions," and the complaint must state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570.

"When evaluating a motion to dismiss under Rule 12(b)(6) or 12(c), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff." *Radcliffe v. Securian Fin. Grp., Inc.*, 906 F. Supp. 2d 874, 884 (D. Minn. 2012) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)). However, the Court is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Retro Television Network, Inc. v. Luken Comm'cns, LLC*, 696 F.3d 766, 768–69 (8th Cir. 2012). Counterclaims are analyzed using the same standard as claims asserted by an original plaintiff. *See, e.g., Bancorpsouth Bank v. Envtl. Operations, Inc.*, 10 F. Supp. 3d 975, 980 (E.D. Mo. 2014).

**Sufficiency of Damages Allegations**

The crux of Plaintiff's motion to dismiss is that Defendant's counterclaims must fail because Defendant was not actually injured by Plaintiff's actions, since Defendant has not actually paid the vast majority of the amount called for in the parties' agreement. State law controls this action brought under diversity jurisdiction. *See Washington v. Countrywide Home Loans, Inc.*, 655 F.3d 869, 873 (8th Cir. 2011). As noted above, Defendant asserts

four different counterclaims: breach of contract, breach of express warranty, breach of implied warranty, and misrepresentation (Counts I-IV, respectively). Missouri law holds that actual injury to the party asserting the claim is an element of each. *See Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010) (breach of contract); *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. 2010) (breach of express warranty); *W. Waterproofing Co. v. Elastomeric Roofing Sys., Inc.*, No. 4:09CV1520 TIA, 2010 WL 5392775, at *3 (E.D. Mo. Dec. 21, 2010) (breach of implied warranty); *Collins v. Mo. Bar Plan*, 157 S.W.3d 726, 734 (Mo. Ct. App. 2005) (misrepresentation). Thus, actual damages are indeed an essential element of Defendant's counterclaims.

The Court rejects Plaintiff's argument that because Defendant did not fully pay for the goods, Defendant cannot have been damaged by Plaintiff's own alleged breach. Instead, the Court is convinced that the time and cost of Defendant's verification process following the receipt of the nonconforming goods, particularly given the unique nature of the products; storage fees for goods that cannot be immediately sold as anticipated; and harm to Defendant's business reputation as a result of passing on goods that did not meet specifications constitute independent and cognizable damages upon which Defendant may have a right to recover. Therefore, the element of damages with respect to each of Defendant's counterclaims is sufficiently met.

Plaintiff's reliance on this Court's opinion in *Grawitch v. Charter Communications, Inc.*, No. 4:12CV01990 AGF, 2013 WL 253534 (E.D. Mo. Jan. 23, 2013), *aff'd*, 750 F.3d 956 (8th Cir. 2014), is misplaced. In that case, the Court determined that plaintiffs' claims had no merit because the plaintiffs had received a service upgrade for free, and were not

damaged simply because they were unable to utilize the upgrade. *Grawitch*, 2013 WL 253534, at *3. Here, by contrast, Defendant's counterclaims allege actual damages, not merely that Defendant cannot use products for which it has not fully paid. Specifically, Defendant alleges as damages its own unanticipated costs in testing and verifying the goods, unanticipated storage fees for the material, and loss of business reputation among its clientele. It is not for the Court to decide at this juncture whether Defendant's losses are offset or outweighed by Plaintiff's claims against Defendant. Instead, the Court's inquiry is limited to an analysis of whether the counterclaims as pled are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court determines that they are.

**Counterclaims Repetitive of Affirmative Defenses**

Plaintiff also argues that Defendant's counterclaims should be dismissed because they are repetitive of the affirmative defenses asserted. The Court agrees that to the extent Defendant's counterclaims seek the same relief and concern the same legal and factual issues as their affirmative defenses, they should be dismissed. *See, e.g., ACIST Med. Sys., Inc. v. OPSENS, Inc.*, No. CIV. 11-539 ADM/JJK, 2011 WL 4640884, at *2 (D. Minn. Oct. 4, 2011). However, the Court finds that because Defendant's counterclaims seek damages for independent injuries resulting out of *Plaintiff's* alleged breach of contract, the counterclaims are distinguishable from Defendant's affirmative defenses and can be maintained. When mutual allegations of breach are made, both parties are entitled to seek affirmative relief. *See, e.g., Melford Olsen Honey, Inc. v. Adee*, 452 F.3d 956, 965 (8th Cir. 2006) ("In this case, however, factual questions existed as to whether both parties breached

and when those breaches occurred. Therefore, these issues were properly submitted to the jury."). Again, the Court at this stage of the proceedings is not evaluating Defendant's likelihood of recovery in excess of any recovery to which Plaintiff may be entitled; instead, it is only making a determination that Defendant's counterclaims as stated are cognizable based on the record now before the Court.

**Counterclaim for Misrepresentation**

Plaintiff next argues that because the misrepresentations Defendant alleges form the basis of the contract between the parties, any relief must sound in contract, and a tort claim for misrepresentation[1] is barred by the economic loss doctrine. The Court agrees, and will dismiss Defendant's counterclaim for misrepresentation.

The economic loss doctrine prohibits a plaintiff from recovering in tort for economic losses that are contractual in nature. *See Self v. Equilon Enterprises, LLC*, No. 4:00CV1903 TIA, 2005 WL 3763533, at *8 (E.D. Mo. Mar. 30, 2005). Under Missouri law, if the duty in a tort claim "arises solely from the contract, the action is contractual." *Union Elec. Co. v. Chi. Bridge & Iron Co.*, No. 4:14CV31 RWS, 2015 WL 1262941, at *6 (E.D. Mo. Mar. 19, 2015) (quoting *Liberty Mut. Fire Ins. Co. v. Centimark Corp.*, No. 4:08CV230, 2008 WL 5423440 DJS, at *2 (E.D. Mo. Dec. 29, 2008)). "Attaching additional tort liability to a breach of contract claim is only allowed when an independent tort has been committed against the plaintiff" and "[t]he independent tort alleged cannot be dependent on the elements of the contract claim." *Hullverson Law Firm, P.C. v. Liberty*

---

[1] Defendant does not specify whether its misrepresentation claim is intended to be a claim for negligent or fraudulent misrepresentation. The Court will address both possibilities in turn.

*Ins. Underwriters, Inc.*, No. 4:12-CV-1994 CAS, 2013 WL 3802517, at *1 (E.D. Mo. July 22, 2013) (internal citation and quotation marks omitted).

Construing Defendant's counterclaim as one for negligent misrepresentation, the Court determines that the counterclaim is not independent of Defendant's breach of contract counterclaim. Defendant states that the alleged misrepresentations were made after the parties engaged in a business relationship and in the scope of entering into an agreement. (Doc. No. 8 at 21-22.) Similarly, any duty breached by Plaintiff was a duty imposed solely by the nature of the contractual relationship between the parties. Therefore, Defendant's remedy sounds in contract, not tort. *See, e.g.*, *Shaughnessy, Kniep, Hawe Paper Co. v. Fettergroup*, No. 4:14-CV-00233-JAR, 2015 WL 1456993, at *4 (E.D. Mo. Mar. 30, 2015) ("In this case, Plaintiff has stated a claim for negligent misrepresentation that rests almost wholly on [Defendant's] refusal to pay for the invoiced Custom Paper . . . [the alleged misrepresentation] is merely a reassurance that [Defendant] would continue performing under the alleged contract.").

The outcome is the same if the Court construes Defendant's counterclaim as one for fraudulent misrepresentation. Missouri courts have not directly addressed the applicability of the economic loss doctrine to fraud claims. *See Trademark Med., LLC v. Birchwood Labs.*, Inc., 22 F. Supp. 3d 998, 1003 (E.D. Mo. 2014). However, this Court has previously conducted an extensive review of Missouri and Eighth Circuit law on the doctrine's applicability to fraud claims, and has determined that, like claims for negligent misrepresentation, "a fraud claim to recover economic losses must be independent of the contract or such claim would be precluded by the economic loss doctrine." *Self*, 2005 WL

3763533, at *11. As stated above, Defendant's counterclaim for misrepresentation is not independent of its breach of contract counterclaim.

Defendant also argues that it is entitled to plead claims "in the alternative at this stage of the litigation." (Doc. No. 31 at 10.) The Court agrees, but this does not entitle Defendant to pursue claims that are legally insufficient or barred by legal doctrine. The counterclaim for misrepresentation will be dismissed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss is **GRANTED** with respect to Count IV (Misrepresentation).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss is **DENIED** with respect to Counts I, II, and III.

                                                                    */s/ Audrey G. Fleissig*
                                                                    AUDREY G. FLEISSIG
                                                                    UNITED STATES DISTRICT JUDGE

Dated this 27th day of January, 2016.